CUYAHOGA FALLS CITY SCHOOL DISTRICT
BOARD OF EDUCATION, Appellant,

v.

OHIO DEPARTMENT OF EDUCATION, Appellee.

[Cite as *Cuyahoga Falls City School Dist. Bd. of Edn.
v. Ohio Dept. of Edn.* (1997), 118 Ohio App.3d 548.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 96API08–1082.

Decided March 6, 1997.

*Pepple & Waggoner* and *Glenn D. Waggoner,* for appellant.

*Betty D. Montgomery,* Attorney General, and *Michael J. Valentine,* Assistant Attorney General, for appellee.

Lazarus, Judge.

Plaintiff-appellant, Cuyahoga Falls City School District Board of Education, appeals from a judgment of the Ohio Court of Claims granting summary judgment in favor of defendant-appellee, Ohio Department of Education. We affirm for the reasons that follow.

In *Cuyahoga Falls Edn. Assn. v. Cuyahoga Falls City School Dist. Bd. of Edn.* (Nov. 20, 1991), Summit App. No. C.A. 14962, unreported, 1991 WL 244501, the Court of Appeals for the Ninth Judicial District directed that summary judgment be entered against appellant and in favor of seven teachers on their claim for back pay and benefits. Appellant employed the teachers as individual/small group instructors, or tutors, beginning at various times dating to the 1976–1977 school year. The court's decision was based on the Supreme Court's holding in *State ex rel. Tavenner v. Indian Lake Local School Dist. Bd. of Edn.* (1991), 62 Ohio St.3d 88, 89–90, 578 N.E.2d 464, 464–466, that a tutor is a teacher under R.C. 3319.09(A) and therefore entitled to compensation under the same statutory schedule. In December 1992, appellant paid the tutors the additional compensation due them for the school years 1983–1988. In March 1993, appellant applied to appellee for partial reimbursement of the additional compensation. Appellant requested $195,062.92 attributable to additional compensation paid in December 1992 and additional related payments to the State Teachers Retirement System and Medicare. Appellee refused to reimburse appellant,[1] and on August 7, 1995, appellant filed this action in the Ohio Court of Claims, arguing that under Ohio Adm.Code 3301–51–06(B)(7)(b) appellee was required to reimburse it at the same rate it reimbursed all other school districts. Ohio Adm.Code 3301–51–06(B)(7) provides:

"(B) State reimbursement will be approved in accordance with the following rules:

" * * *

"(7) Specific learning disabled [2]

---

**1.** Appellee informed appellant that its request had been denied through a letter from appellee's in-house legal counsel dated August 13, 1993. Appellant appealed to the Franklin County Court of Common Pleas pursuant to R.C. 119.12, and the court affirmed. This court reversed and dismissed the case, holding that the decision to deny reimbursement was not an adjudication and was not subject to review pursuant to R.C. 119.12. See *Cuyahoga Falls City School Dist. Bd. of Edn. v. Ohio Dept. of Edn.* (June 13, 1995), Franklin App. No. 94APE11–1717, unreported, 1995 WL 360306.

**2.** " 'Specific learning disability' means a disorder in one or more of the basic psychological processes involved in understanding or in using language, spoken or written, which may manifest itself in an imperfect ability to listen, think, speak, read, write, spell, or to do

"  *  *  *

"(b) Individual/small group instruction for learning disabled children may be reimbursed at an hourly rate of one-half of the local cost per instructional period, regardless of whether the instruction is on an individual basis or for two or three students being taught simultaneously. This instruction shall not be reimbursed for more than one hour per day, per individual or small group, for each day that the school district is legally in session."

On cross motions for summary judgment, the court entered summary judgment for appellee on the ground that because the rule provides that instruction for learning disabled children "may" be reimbursed, appellee had discretion to deny the application. Appellant asserts one assignment of error:

"The Court of Claims erred as a matter of law by determining that the defendant-appellee, the Ohio Department of Education, lawfully denied the application submitted under O.A.C. § 3301–51–06 by the plaintiff-appellant, Cuyahoga Falls City School District Board of Education, for reimbursement of individual/small group instruction costs related to the education of handicapped students."

Appellate review of summary judgments is *de novo*. *Koos v. Cent. Ohio Cellular, Inc.* (1994), 94 Ohio App.3d 579, 588, 641 N.E.2d 265, 271–272; *Midwest Specialties, Inc. v. Firestone Tire & Rubber Co.* (1988), 42 Ohio App.3d 6, 8, 536 N.E.2d 411, 413–414. Summary judgment is appropriate only if there is no genuine issue of material fact, the moving party is entitled to judgment as a matter of law, and, construing all evidence in favor of the nonmoving party, reasonable minds could reach only a conclusion in favor of the moving party. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47. There are no genuine issues of material fact in this case. The only dispute is over the correct interpretation of Ohio Adm.Code 3301–51–06(B)(7)(b). As a general rule, courts defer to an administrative agency's interpretation of its own regulations. *Clark v. Ohio Dept. of Mental Retardation & Developmental Disabilities* (1988), 55 Ohio App.3d 40, 42, 562 N.E.2d 497, 499–500; *Cuyahoga Cty. Bd. of Commrs. v. Ford* (1987), 35 Ohio App.3d 88, 92, 520 N.E.2d 1, 4–5; *Rings v. Nichols* (1983), 13 Ohio App.3d 257, 260, 13 OBR 320, 323–324, 468 N.E.2d 1123, 1126–1127.

---

mathematical calculations. The term includes such conditions as perceptual handicaps, brain injury, minimal brain dysfunction, dyslexia, and developmental aphasia. The term does not include children who have learning problems which are primarily the result of visual, hearing or motor handicaps, of mental retardation, of emotional disturbance, or of environmental, cultural or economic disadvantage." Ohio Adm.Code 3301–51–01(FFF).

Ohio Adm.Code 3301–51–03(A)(5) provides: "Each school district shall make provision for a comprehensive special education program and related services so that every handicapped child is appropriately served." State funding of local special education programs and related services is governed by Ohio Adm.Code 3301–51–06. Ohio Adm.Code 3301–51–06(B) sets forth rules under which the state reimburses school districts for programs for seven categories of handicap: (1) multihandicap, (2) hearing handicap, (3) visual handicap, (4) orthopedic and/or other health handicap, (5) severe behavior handicap, (6) developmental handicap, and (7) specific learning disabled. Appellee approved all reimbursement applications from public schools for individual/small group instruction costs incurred in the 1992–1993 school year and paid them at a uniform rate of about 44.5 percent. Appellant does not challenge the 1992–1993 reimbursement rate; rather, appellant seeks additional reimbursement at the 1992–1993 rate for the expense it incurred in 1992 for services provided from 1983 to 1988.

Appellant asserts four arguments why Ohio Adm.Code 3301–51–06(B)(7)(b) must be interpreted as requiring appellee to reimburse all school districts at the uniform rate: (1) the plain meaning of the rule; (2) interpreted otherwise, the rule would be an unconstitutional delegation of legislative authority; (3) appellee's grounds for rejection are without merit; and (4) rejection was arbitrary and capricious.

Appellant argues that the plain meaning of Ohio Adm.Code 3301–51–06(B)(7)(b) is that appellee must reimburse all school districts at a uniform rate. Appellant relies on the word "will" in the introductory language of Ohio Adm.Code 3301–51–06(B): "State reimbursement will be approved in accordance with the following rules." Appellant argues that to give effect to the word "will," appellee is required to reimburse school districts at a uniform rate and that the effect of the word "may" in Ohio Adm.Code 3301–51–06(B)(7)(b) is merely to reserve to appellee the discretion to reimburse at a uniform rate that is less than fifty percent.

We agree with the trial court's interpretation of Ohio Adm.Code 3301–51–06(B)(7)(b), that by the word "may," the State Board of Education and appellee reserved the discretion to deny a reimbursement application. Even if the word "will" in the introductory language of Ohio Adm.Code 3301–51–06(B) denotes a duty to reimburse, it is a duty expressly conditioned on the approval being "in accordance with the following rules." One of those rules is Ohio Adm.Code 3301–51–06(B)(7)(b), which provides that "instruction for learning disabled children *may* be reimbursed at an hourly rate of one-half of the local cost." (Emphasis added.) The general rule of statutory construction is that the word "may" is permissive, or discretionary. See *Dorrian v. Scioto Conserv. Dist.* (1971), 27 Ohio St.2d 102, 56 O.O.2d 58, 271 N.E.2d 834, paragraph one of the

syllabus. Therefore, appellee retained discretion to deny a reimbursement application under Ohio Adm.Code 3301–51–06(B)(7)(b).

■ We reject appellant's interpretation of Ohio Adm.Code 3301–51–06(B)(7)(b) for another reason. Under appellant's interpretation, once appellee had decided upon a reimbursement rate, it would be required to pay that percentage of a school district's cost irrespective of the reasonableness of that cost or the timeliness of the request.

Appellant refers us to *Quayle v. Buckeye Local School Dist. Bd. of Edn.* (Nov. 30, 1994), Ashtabula C.P. No. 93–CV–329, unreported, reversed (Sept. 15, 1995), Ashtabula App. No. 94–A–0074, unreported (holding that court of common pleas lacked subject matter jurisdiction). In *Quayle,* the court of common pleas held that appellee is required under Ohio Adm.Code 3301–51–06(B)(7)(b) to reimburse all school districts at a uniform rate. The court's opinion offers no rationale for its holding,[3] and we disagree with it for the reasons set forth above.

Appellant argues that appellee's interpretation of Ohio Adm.Code 3301–51–06(B)(7)(b) renders the rule an unconstitutional delegation of legislative authority. Appellant cites *Matz v. J.L. Curtis Cartage Co.* (1937), 132 Ohio St. 271, 8 O.O. 41, 7 N.E.2d 220; *Weber v. Bd. of Health* (1947), 148 Ohio St. 389, 35 O.O. 351, 74 N.E.2d 331; *Midwestern College of Massotherapy v. Ohio Med. Bd.* (1995), 102 Ohio App.3d 17, 656 N.E.2d 963; and Section 26, Article II of the Ohio Constitution for the proposition that the General Assembly may not delegate legislative power to administrative agencies. Appellant erroneously argues that Ohio Adm.Code 3301–51–06(B)(7)(b) involves a delegation of "legislative" authority from the State Board of Education to appellee, the Department of Education:

" * * * Here, Department of Education regulations are promulgated by the State Board of Education. O.R.C. § 3301.07. The Department cannot exercise discretionary powers in administering O.A.C. § 3301–51–06 which are not granted by the State Board of Education in the regulation itself with appropriate guidelines for the exercise of that discretion. Since no standards for administra-

---

**3.** "The third-party defendants [the Ohio Department of Education] argue that Ohio Administrative Code Section 3301–51–06(B)(7)(b) contains permissive language, in that, instruction for learning disabled children *may* be reimbursed at an hourly rate of one-half of the local cost per instructional period. This Court finds that during the school years in question, the third-party defendants did exercise their discretion and reimburse school districts at the rate of 50%. Once that discretion was exercised, the third-party defendants may not now determine to pay at a rate other than 50%. Although the language of the Administrative Code is permissive, the third-party defendants, once they have exercised their discretion to fund at a specific percentage rate, must thereafter fund all requests at that same predetermined rate. The third-party defendants do not have authority to fund some requests at one rate and other requests at a different rate. Their discretion was exercised and the funding rate for the years in question was set at 50%." *Quayle, supra,* at 2–3.

tive discretion are provided by O.A.C. § 3301–51–06, it must be construed as nondiscretionary in its application or it unconstitutionally grants legislative authority to Department administrators."

■ The State Board of Education does not delegate power to appellee the way a legislature delegates power to an administrative agency. Appellee is the administrative unit and organization through which the policies, directive, and powers of the State Board of Education are administered. R.C. 3301.13, paragraph one. In this context, the State Board of Education and appellee are one.[4] Because any power held by the State Board of Education may be administered through appellee, Ohio Adm.Code 3301–51–06(B)(7)(b) does not constitute an improper delegation of "legislative" authority from the State Board of Education to appellee.

Finally, appellant attacks appellee's rationale for rejecting its application and argues that because there was no reason to reject the application, the rejection was arbitrary and capricious. Appellee informed appellant that its request had been denied through a letter from appellee's in-house legal counsel dated August 13, 1993. The letter asserts that the language of Ohio Adm.Code 3301–51–06(B)(7)(b) is discretionary rather than mandatory. The letter asserts that appellee's reimbursement decisions have been made each year based on the level of funding appropriated by the General Assembly and that if the funding does not allow reimbursement at one-half the cost, then a uniform reduction has been made for all eligible school districts. The letter explains that the moneys allocated for school years 1983 through 1988 have been spent and that no funds for those years are available for any additional reimbursement.

Appellant argues that because no statute or rule sets forth a limitations period for filing reimbursement applications, appellee could not rely on the fact that the request covered costs for services rendered as much as ten years earlier. Appellant also argues that any application for reimbursement has the potential effect of reducing the pool of available money for all school districts potentially requiring a reduction of the uniform reimbursement rate, regardless of when the services for which reimbursement is sought were performed.

Appellant's argument lacks merit. R.C. 3317.01, at the fifth paragraph, provides:

"Moneys distributed pursuant to this chapter shall be calculated and paid on a fiscal year basis, beginning with the first day of July and extending through the

---

4. Paragraph two of R.C. 3301.13 suggests that the State Board of Education is part of appellee: "The department of education shall consist of the state board of education, the superintendent of public instruction, and a staff * * * as may be necessary * * *."

thirtieth day of June. The moneys appropriated for each fiscal year shall be distributed at least monthly to each school district unless otherwise provided for."

It is neither arbitrary nor capricious for appellee to reimburse costs based on the school year and the General Assembly's periodic appropriations. Moreover, the last paragraph of R.C. 3317.01 states: "All funds allocated to school districts under this chapter, except those specifically allocated for other purposes, shall be used to pay current operating expenses only." "Current operating expenses" is not defined in the Revised Code or the Administrative Code, and appellant has not cited any authority for the proposition that reimbursement of costs for services rendered several years earlier constitutes current operating expenses.

For the foregoing reasons, the assignment of error is overruled, and the judgment of the Ohio Court of Claims is affirmed.

*Judgment affirmed.*

TYACK, P.J. and CLOSE, J., concur.